UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.  4:19 CR 339 AGF (JMB) |
| | ) |
| JORGE BETANCES, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**[1]

Currently before the Court is Defendant Jorge Betances's Motion to Suppress Evidence and Statements.  (ECF No. 44)  The government opposes the motion.  (ECF No. 47)  For the reasons outlined below, the undersigned recommends that the Court deny the motion.

**INTRODUCTION AND BACKGROUND**

On April 25, 2019, Jorge Betances, the defendant herein, was charged by felony complaint with violating 18 U.S.C. § 1029 (conspiracy to possess device-making equipment). On May 2, 2019, the Grand Jury charged Betances with one count of knowingly and with the intent to defraud possessing device making equipment, namely credit card skimming devices and related materials, in violation of 18 U.S.C. § 1029.  The charge stems from evidence seized following a traffic stop on April 22, 2019, in Phelps County, in the Eastern District of Missouri.

In his suppression motion, Betances argues that law enforcement extended the traffic stop

---

[1] Pretrial matters have been referred to the undersigned United States Magistrate Judge, under 28 U.S.C. § 636(b).

longer than reasonably necessary and, therefore, any evidence seized during the stop must be suppressed.  He also argues that any statements he made were the fruit of the illegal stop and must likewise be suppressed.  The government counters that the officer conducting the stop developed reasonable suspicion that justified further inquiry.

On January 24, 2020, the Court held an evidentiary hearing.  Betances was present and represented by Assistant Federal Public Defender Brocca Morrison.  The government was represented by Assistant United States Attorney Kyle Bateman.  The government presented the testimony of Carmelo Crivello, a Sergeant with the Phelps County Sheriff's Department.  Ms. Morrison cross-examined Sgt. Crivello extensively.  The parties also offered several exhibits.  Government's Exhibits 1A-1I were photographs associated with the car stop in question.  Defendant's Exhibit A was a copy of a video from Sgt. Crivello's phone that depicted a portion of the traffic stop.

At the conclusion of the hearing, Betances requested leave to submit a post-hearing memorandum after receiving a transcript of the evidentiary hearing.  Both parties have filed their respective post-hearing memoranda.  (ECF Nos. 65, 66)

Based on the testimony and evidence from the evidentiary hearing, having had the opportunity to observe the demeanor and evaluate the credibility of the witnesses, and having fully considered the parties' arguments and written submissions, the undersigned makes the following findings of fact, conclusions of law, and recommendation.

## **FINDINGS OF FACT**

Carmelo Crivello is a Sergeant with the Phelps County Sheriff's Department.  He is also a task force officer with the Drug Enforcement Agency ("DEA").  As of the evidentiary hearing, Sgt. Crivello had been with the Phelps County Sheriff's Department for about twenty years and

had been a DEA task force officer for about six years. Sgt. Crivello testified regarding his extensive experience in the area of criminal interdiction, most notably along Interstate 44 in Phelps County. Sgt. Crivello testified that he teaches courses on interdiction.

On April 22, 2019, shortly before noon, Sgt. Crivello stopped a white Ford Explorer for traveling 75 miles per hour in a 60 mile per hour zone in Phelps County. Sgt. Crivello determined that the vehicle was speeding by pacing it. Sgt. Crivello also ran a license plate check and learned that it was a rental vehicle.

Sgt. Crivello, who was wearing clothing indicating he was a law enforcement officer, approached the vehicle and noticed that there were two occupants. Sgt. Crivello advised the driver, who was later identified as Betances, the defendant herein, that he was speeding. According to Sgt. Crivello, Betances told him that he was looking for a Kentucky Fried Chicken restaurant in the area. Sgt. Crivello testified that the female passenger in the vehicle did not make any comments and stared straight ahead. Sgt. Crivello elected to have Betances accompany him to his patrol vehicle to conduct a license and registration check. Betances sat in the front seat and was not restrained. Betances provided Sgt. Crivello with a Pennsylvania driver's license and a rental agreement from Avis. The vehicle was not rented in Betances's name. Betances advised Sgt. Crivello that the car had been rented by his girlfriend's mother and that the female in the car was Betances's cousin.

While in Sgt. Crivello's car, Betances told Sgt. Crivello that he and his passenger were traveling to California to watch the filming of the movie "Bad Boys 3." Sgt. Crivello testified that he found Betances's explanation suspicious. Sgt. Crivello explained that he grew up in California and that, in his experience, film locations where not made public in advance. Sgt. Crivello also testified that I-44 was considered "one of the major pipelines of criminal activity."

3

(Tr. at 12)  According to Sgt. Crivello, about two minutes had elapsed by this point.

After hearing Betances explain the purpose of his trip, Sgt. Crivello returned to the rental vehicle and asked the passenger for identification while Betances remained in Sgt. Crivello's patrol vehicle.  Sgt. Crivello asked the passenger, who was named Kayla, the purpose of her travel with Betances.  She told Sgt. Crivello that she did not know.  Sgt. Crivello testified that her answer provided him with a "huge red flag."  (Tr. at 12)

Sgt. Crivello returned to his vehicle and ran a criminal check on Betances,[2] which eventually came back negative.  After he returned to his vehicle, Sgt. Crivello also asked Betances if his passenger knew the purpose of their travel.  Betances told him that she knew and she was excited.  Sgt. Crivello then advised Betances that his passenger had told Sgt. Crivello that she did not know where the pair was going.  In response, Betances advised that he had not told her the purpose of their travel.  Betances then provided an account as to how his passenger had ended up on the trip with him.  Betances told Sgt. Crivello that he had left Philadelphia alone and made it to about Harrisburg, PA, but he went back to pick up his passenger in Philadelphia and embarked on the trip together.

At some point after he returned to his patrol car, Sgt. Crivello used his cell phone to record his interaction with Betances.  Sgt. Crivello testified that he made the video for use in a training class.  Sgt. Crivello testified that the video stopped because he had to use the phone to make a call.  The recording was provided to Defendant prior to the evidentiary hearing.  The video depicts a view looking through the windshield of Sgt. Crivello's vehicle to the rear of rental vehicle Betances had been driving. The brief video also captures some of the conversation

---

[2] Sgt. Crivello referred to the check as an "EPIC" check.  According to Sgt. Crivello, EPIC stands for El Paso Intelligence Center.

4

between Sgt. Crivello and Betances.³

After Betances explained how he returned to Philadelphia to pick up the passenger and that he did not tell her of the purpose of the trip, Sgt. Crivello asked Betances for consent to search the vehicle. Sgt. Crivello testified that Betances agreed to the search. The brief video corroborates Sgt. Crivello. Betances can be seen approaching the Ford Explorer and opening the tailgate for Sgt. Crivello. During cross-examination, Sgt. Crivello testified that, up to the point at which he asked for consent, Betances was not free to leave because the traffic stop was not yet complete. Sgt. Crivello estimated that about seven minutes elapsed from the initial stop until he asked for consent to search. Sgt. Crivello further testified that, had Betances not consented, he would have requested a canine to the scene and that he would not have released the rental vehicle. Sgt. Crivello also testified that he elected not to issue a speeding ticket to Betances.

After he consented to the search and opened up the hatch on the vehicle for Sgt. Crivello, Betances identified a black suitcase that belonged to him. Sgt. Crivello looked through that bag and noticed several cloth bags, one of which contained locks for fuel pumps. Sgt. Crivello also discovered items consistent with credit card fraud, including boxes of blank credit cards and latex gloves. The government's exhibits are consistent with Sgt. Crivello's testimony.

While Sgt. Crivello was searching the bags, Betances retrieved a cell phone and attempted to make a call. Sgt. Crivello testified that, for safety reasons, he took the phone from Betances. After that, Betances yelled to his passenger and told her to call someone. Sgt. Crivello called for backup assistance and another officer with a canine eventually arrived.

Sgt. Crivello arranged to have the Ford Explorer driven to a garage at the Sheriff's Department. Sgt. Crivello drove Betances to the department in his patrol vehicle. Betances was

---

³ The video recording is brief, but generally corroborates Sgt. Crivello's testimony.

5

not restrained during the drive. During approximately this time, Sgt. Crivello verbally advised Betances of his Miranda rights.[4] Betances then made statements to Sgt. Crivello. Once they arrived at the garage, Betances was seated on a chair in the garage while Sgt. Crivello and others completed the search of the vehicle and photographed items of interest. At no time did Betances tell the officers to stop searching. At no time did Betances tell Sgt. Crivello that he did not want to speak further. Betances was not restrained and was allowed to get up and walk around.

Later, Sgt. Crivello moved Betances to an interview room and conducted another interview. Sgt. Crivello asked Betances if he wished to cooperate and if he still understood his rights and Betances acknowledged that he did. After the interview, Betances was placed on a 24-hour hold pending application for a warrant. According to Sgt. Crivello, Betances advised that his aunt was going to pick up the rental vehicle, but it was never retrieved.

Additional findings of fact and credibility determinations are included in the discussion below.

## DISCUSSION, CONCLUSIONS OF LAW, AND RECOMMENDATION

Betances asks the Court to suppress the evidence seized from the rental vehicle he was driving when Sgt. Crivello stopped him. Betances argues that Sgt. Crivello unconstitutionally prolonged the stop. Betances also asks the Court to suppress any statements he made to law enforcement because those statements were the fruit of the prolonged traffic stop.

The undersigned will first consider whether the traffic stop was lawful. An officer's decision to stop a car is "reasonable" for Fourth Amendment purposes, if the officer has "probable cause to believe that a traffic violation has occurred." Whren v. United States, 517

---

[4] Sgt. Crivello could not recall the exact time when he provided Miranda warnings to Betances, but he believed it was before they left the highway to drive back the Sheriff's Department.

6

U.S. 806, 810 (1996) (citing cases); see also United States v. Espinoza, 885 F.3d 516, 522-23 (8th Cir. 2018). The seriousness of the violation is not relevant. Rather, "[any] violation of traffic law, even a minor violation, is sufficient probable cause to support a stop." United States v. Miller, 915 F.3d 1207, 1209 (8th Cir. 2019); see also United Sates v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994) (en banc) (citation omitted). An officer's subjective motivations for stopping the vehicle are also not relevant, "even if the officer conducted the valid traffic stop as a pretense for investigating other criminal activity." United States v. Hambrick, 630 F.3d 742, 746 (8th Cir. 2011); see also Whren, 517 U.S. at 812-13 (explaining that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"). Thus, a traffic stop supported by probable cause "is valid even if the police would have ignored the traffic violation but for their suspicion that greater crimes are afoot." United States v. Thomas, 93 F.3d 479, 485 (8th Cir. 1996). It is the government's burden of showing that probable cause existed to justify the traffic stop. United States v. Andrews, 454 F.3d 919, 922 (8th Cir. 2006).

Sgt. Crivello credibly testified that he paced Betances's rental vehicle and that Betances was driving excess of the posted speed limit. Betances does not dispute this fact. Therefore, the undersigned finds that Sgt. Crivello had probable cause to believe a traffic violation occurred and lawfully stopped the rental vehicle.

The Court must next decide if Sgt. Crivello unconstitutionally prolonged the traffic stop. "[I]n the absence of reasonable suspicion, [a police officer] may not extend an otherwise-completed traffic stop," to conduct an additional investigation. United States v. Woods, 829 F.3d 675, 679 (8th Cir. 2016) (citing Rodriguez v. United States, 135 S. Ct. 1609, 1615-16 (2015)). A delay that extends or prolongs a traffic stop beyond the time needed to address the basis of the stop and "attend to related safety concerns" is "impermissible unless it is supported

7

by reasonable suspicion." United States v. Sanchez, 955 F.3d 669, 676 (8th Cir. 2020) (citations and quotations omitted); United States v. Davis, 943 F.3d 1129, 1132 (8th Cir. 2019) ("A traffic stop is constitutionally limited to the time required to complete its purpose but may be extended due to an officer's reasonable suspicion of criminal activity.") (citation omitted).

There is, however, no fixed time limit for completing the tasks associated with a traffic stop, and officers conducting traffic stops are not limited to a defined set of required tasks. Rather, "[d]etermining whether the length of a specific detention is reasonable [involves] a fact-intensive inquiry." United States v. Williams, 929 F.3d 539, 544 (8th Cir. 2019).

There are a number of acceptable tasks and inquiries that an officer may pursue during a traffic stop. For example, "[o]nce the officer makes the traffic stop, the officer may lawfully check the driver's license and registration, ask the driver about his destination and purpose, and request that the driver sit inside the patrol car." Espinoza, 885 F.3d at 523 (citation and quotations omitted). Similarly, the "[Eighth Circuit] has consistently held [that] an officer may also question a vehicle's passengers to verify information provided by the driver." United States v. Ward, 484 F.3d 1059, 1061 (8th Cir. 2007) (citation and quotations omitted); see also United States v. Barragan, 379 F.3d 524, 529 (8th Cir. 2004). Furthermore, an officer conducting a traffic stop may check the criminal history of the driver. See United States v. Fuehrer, 844 F.3d 767, 772 (8th Cir. 2016). If the officer conducting the stop "discovers information leading to reasonable suspicion of an unrelated crime," that officer may lawfully "extend the stop and broaden the investigation" to confirm or dispel that suspicion. Woods, 829 F.3d at 679; see also Williams, 929 F.3d at 545.

The critical issue the Court must resolve is whether the information provided to Sgt. Crivello during the routine portion of the traffic stop provided him with a reasonable suspicion

8

that Betances was involved in criminal conduct other than a traffic violation.  Based on the evidence and testimony at the evidentiary hearing, and in view of the foregoing legal principles, the undersigned finds that the traffic stop was not unconstitutionally prolonged prior to the point at which Sgt. Crivello requested and received consent to search Betances's vehicle.  First, as noted above, Sgt. Crivello lawfully stopped Betances's vehicle for speeding.  Second, having lawfully stopped the vehicle for a traffic violation, Sgt. Crivello could ask Betances to accompany him to the patrol vehicle as part of the routine tasks associated with the traffic stop.  Third, Sgt. Crivello could lawfully ask Betances his destination and the purpose of his travels.  Fourth, Sgt. Crivello could speak with Betances's passenger to verify the information Betances provided.

Sgt. Crivello credibly testified that his inquiry into Betances's destination and the purpose of travel occurred near the beginning of the traffic stop, and before he completed a criminal background check on Betances.  Sgt. Crivello also credibly testified that he viewed Betances's explanation of his destination and the purpose of his travel with skepticism.  That alone may not be enough to establish reasonable suspicion, but it provided a good reason to ask the passenger what she knew about their travel.  Such an inquiry is part of the tasks that may be completed during a routine stop.  See Ward, 484 F.3d a 1061.  And Betances's passenger told Sgt. Crivello she did not know the purpose of their travels.  Sgt. Crivello's testimony was very clear that he considered the passenger's answer to be a big red flag.[5]  All of these facts were developed during the time allowed to complete routine tasks associated with the traffic stop.  The

---

[5] Sgt. Crivello has extensive experience and training in interdiction.  The Eighth Circuit has explained that "officers may draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'"  United States v. Hurd, 785 F.3d 311, 314 (8th Cir. 2015) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)).

9

fact that Sgt. Crivello may not have intended to issue a ticket is not outcome determinative because the stop was not yet complete, and Sgt. Crivello's subjective motives for the otherwise lawful traffic stop are not material.  See Whren, 517 U.S. at 808, 812-13.

From an objective perspective, and based on the totality of the circumstances, the undersigned concludes that a reasonable officer in Sgt. Crivello's position would have a reasonable articulable suspicion that Betances's was involved in other criminal activity no later than the point at which Betances's passenger advised him that she did not know the purpose of the pair's travel.  A reasonable officer would likely find it quite suspicious that a passenger travelling from Philadelphia, PA, to the middle of Missouri, did not know the purpose of the trip. This fact, when coupled with other facts, justified further inquiry.  These other facts included the use of a rental vehicle rented by a third party who was not present,[6] and the passenger stared straight ahead when Sgt. Crivello first approached the vehicle.  And the further inquiry conducted by Sgt. Crivello amplified the reasonable suspicion.  Betances changed his answer regarding his passenger's knowledge of the purpose of the trip after Sgt. Crivello confronted him with the fact that she said she did not know the purpose of the travel.

The undersigned finds that Sgt. Crivello had reasonable suspicion sufficient to prolong the traffic stop when he asked Betances for consent to search the rental vehicle.  Betances does not contend that his consent was otherwise involuntary.  Therefore, Officer Crivello could lawfully search the vehicle.  See United States v. Welch, 951 F.3d 901, 906 (8th Cir. 2020 ("Free and voluntary consent renders a search reasonable under the Fourth Amendment.") (citation omitted).  Once Officer Crivello observed items consistent with credit card fraud / skimming

---

[6] Sgt. Crivello explained that driving a rental car rented by another person who was not present was a piece of the puzzle.  (Tr. at 11)  But his testimony made clear that he did not view that fact as controlling or critical.

10

during the consent search, he had probable cause to further detain and search the rental vehicle with or without consent. See United States v. Dunn, 928 F.3d 688, 693 (8th Cir. 2019) (explaining that, "[a]s long as [an] officer [has] probable cause, [the officer] may search an automobile without a warrant under the automobile exception") (citation and quotation omitted).[7]

For the foregoing reasons, the undersigned concludes that Sgt. Crivello did not unconstitutionally extend the traffic stop and he had valid consent to search the rental vehicle. It is respectfully recommended, therefore, that the Court deny Betances's motion to suppress physical evidence seized from the rental car.

Regarding his motion to suppress statements, Betances does not argue that his Miranda rights were violated or that his statements were otherwise involuntary  Rather, he argues that any statements he made followed the unlawfully prolonged traffic stop. Inasmuch as the undersigned has found that Sgt. Crivello possessed a reasonable suspicion to prolong the traffic stop and request consent to search the vehicle, the fundamental premise of Betances's motion to suppress statements cannot be sustained. Thus, the undersigned also recommends that the Court deny Betances's motion to suppress statements.

## CONCLUSION AND RECOMMENDATION

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant Jorge Betances Motion to Suppress Evidence and Statements [ECF No. 44] be **DENIED**.

---

[7] Government's Exhibits 1-A through 1-H reflect items located during the search of the rental vehicle. Government's Exhibit 1-E, for example, depicts ribbon cables and other electronic / electrical connectors. Government's Exhibit 1-F depicts a box of gloves. Government's Exhibit 1-G depicts boxes of blank credit card stock. Government's exhibit 1-H depicts a tool bag. These items are consistent with credit card fraud activities.

The parties are advised that they have fourteen (14) days in which to file written objections to the foregoing Report and Recommendation unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990). see also 28 U.S.C. § 636(b)(1)(A), Fed. R. Crim. P. 59(a).

This matter is set for trial on July 20, 2020, at 9:00 a.m., before the Honorable Audrey G. Fleissig, United States District Judge.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this  18th  day of May, 2020.